**Debevoise**
**&Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

October 31, 2018

Dear Judge Swain:

We write to request that Carlos Alvarez be released on the following conditions:  (1) he sign a $150,000 bond and post as collateral his union annuity fund; (2) the four sureties described below also sign the bond; (3) he be subject to home detention with electronic monitoring; and (4) he be required to maintain the employment that he had at the time he was arrested, which awaits him if he is released.

This is an unusual case.  Carlos Alvarez faces seven separate drug trafficking charges, but the *aggregate* quantity of narcotics involved—counting all of the controlled buys and the fruits of the search warrant executed in his home—is less than an ounce of powder cocaine and three one-hundreths of a gram of heroin.  The total receipts over the almost three-month period of drug trafficking alleged in the indictment are $1,200.  Based on the charged conduct for Counts One through Seven, the applicable advisory Guidelines range would most likely be either 8-14 months or 12-18 months.

Counts Eight and Nine, on the other hand, are on the opposite end of the sentencing spectrum.  Conviction on those counts, which have been brought under 18 U.S.C. § 924(c), would mandate a minimum aggregate sentence of 30 years in prison.  As discussed in more detail below, those counts provide half of the explanation of why the FBI engaged a confidential informant for a months-long investigation into such minor drug trafficking.  A cold murder case provides the other half.

Carlos Alvarez (18-cr-656)                    2                    October 31, 2018

Alvarez poses no risk of flight and no danger to the community.  He has deep roots in his East Harlem community, where he has spent his entire life, and no roots anywhere else.  He had a full-time construction job for more than a decade before he was arrested, and he will return to that job if he is released on conditions.  He also owns shares in his Mitchell-Lama apartment, to which he will return if he is released pending trial.  He will lose both the job and the home if he is detained.

The overwhelming majority of the potential sentence facing Alvarez on the charges in the indictment come from the final two counts in the indictment.  But the Government's factual allegations, even if proved at trial, do not set out colorable violations of § 924(c).  On their face, the allegations are insufficient to sustain a conviction on those counts.  The 924(c) charges and the disproportionate penalties they carry should not factor into the Court's decision on Alvarez's continued pretrial detention.

## BACKGROUND

### Alvarez's Youth and Prison Term

Alvarez was born in 1972.  He was born in, and has lived his entire life in, East Harlem.  He was barely 16 when he was first arrested.  At 22, he was arrested and charged with narcotics trafficking, and, upon his conviction in state court, he was sentenced to nine years to life.  He served that term, was paroled in 2006, and was discharged from parole in 2011.

### The First Effort to Obtain Alvarez's Cooperation

After his release, Alvarez found a job working at Yankee Stadium.  He proceeded to rebuild his life and move on from the lifestyle that had landed him in custody when he was younger.  Early during his period on parole, however, Alvarez was taken into custody while at work.  The arresting officers immediately pressured him to cooperate in their investigation of a

Carlos Alvarez (18-cr-656)                 3                 October 31, 2018

double murder in East Harlem in 1995.  Alvarez refused to cooperate.  No charges were filed, but he lost his job as a result of the arrest.

*Alvarez's Career in Construction*

Alvarez thereafter began working in construction.  He has worked in that field fulltime since 2007.[1]  He joined Local 79 of the Mason Tenders, and at the time of his arrest he was a shop steward.  We have spoken to Barrie Smith, the Business Agent for Local 79, who has informed us that as long as Alvarez remains a member in good standing, he is assured of a job if he is released on conditions.  To remain in good standing, a member of Local 79 must remain current in paying dues.  With the assistance of his family, Alvarez has paid his dues since his arrest, and, if released, he plans to immediately return to work.

Alvarez lives alone at 420 E. 111th Street, New York, New York.  It is a Mitchell-Lama building, and Alvarez has a small amount of equity in his apartment.  Again with the help of his family, Alvarez has been able to maintain the monthly payments since his arrest, but in the absence of a return to employment in the near future he will almost certainly lose both his job and his home.

*The Events Giving Rise to This Case*

Earlier this year the FBI began deploying a confidential informant in its effort to make a case against Alvarez.  On six occasions—May 23 (Count One), May 30 (Count Two), June 19 (Count Three), June 28 (Count Four), July 10 (Count Five), and July 31 (Count Six)—the informant purchased a total of 8.382 grams, less than a third of an ounce, for a total of $1,200. The quantity involved in the individual sales never exceeded 1.5 grams, and the cocaine was sold in vials to the informant, himself an addict.

---

[1] We will not burden the Court with Alvarez's work history reports since that time, but we will have them in the courtroom tomorrow.

Carlos Alvarez (18-cr-656)                    4                    October 31, 2018

The Government took down the Alvarez case on August 14, when it executed a search warrant on his home (he was not present) and an arrest warrant on Alvarez himself.  The agents seized small quantities of drugs from a lunchbox in the main room and a Tupperware container in the kitchen, and a new firearm, still in its box, from the bedroom dresser.  The cache of cocaine allegedly seized from the apartment—a total of roughly half an ounce—together with three one-hundredths of a gram of heroin, underly Count Seven of the indictment.

As for the first of the two § 924(c) counts, the Government alleges that, during the June 19 transaction, Alvarez told the confidential informant that he would be able to sell him a firearm but did not have it yet.  We have just received the recording of that conversation, and we do not hear such a conversation.  The Government further alleges that on June 28, Alvarez used and carried a firearm during and in relation to, and possessed the same firearm in furtherance of, the alleged sale of cocaine on that day (that is, the crime underlying Count Four).  However, the June 28 transactions are recorded, and the recording shows the CI separately meeting with and paying a different person (from whom he allegedly obtained a firearm) before he is alleged to have purchased a small amount of cocaine from Alvarez.  The recording reveals two distinct transactions, and no rational factfinder could find that the firearm the informant claims he obtained from a third party was possessed or used or carried by Alvarez during or in furtherance of the subsequent alleged sale of 1.5 grams of cocaine.

The second § 924(c) count is equally deficient even if the facts alleged by the Government are all true.  It is based solely on the fact that, during the search on August 14, a firearm was recovered in a separate area of Alvarez's apartment at the same time as half an ounce of narcotics.

Carlos Alvarez (18-cr-656)                    5                    October 31, 2018

*Renewed Effort to Obtain Alvarez's Cooperation*

        Through this case, the Government is pressuring Alvarez to provide testimony in a 22-year-old murder case for the second time in a decade.  Convinced he has knowledge about (but not necessarily participation in) that crime, and determined to coerce his testimony, the Government retained the informant, an addict, to purchase user-quantities of cocaine from him this past summer.  Knowing that the minor drug trafficking allegations those efforts produced would not accomplish their goal, the Government then sought, again through the confidential informant, to put Alvarez in the position in which he finds himself today: either testify for the Government in an old, gang-related murder case, or risk conviction on convoluted charges that carry mandatory sentences that would require him to spend virtually the rest of his life in prison.

## THE PROPOSED BAIL PACKAGE

        As noted above, in addition to Alvarez himself, there are four individuals who will sign the $150,000 bond as sureties.  The first is Elizabeth Hernandez, a long-time friend of Carlos Alvarez, who is currently employed as a Customer Service Representative at Fredrick Olman and earns $26,000 per year.  The second is Lizette Alavarez, the sister of Carlos Alvarez, who works as a Legal Manager at 1199 Housing Corp for Marion Scott Real Estate and earns a little over $38,000 per year.  The third is Kirsys Cabrera, who works as a Laborer in the same union as Carlos Alvarez (Local Union 79) and usually earns a little over $45,000 per year.  She is the mother of Alvarez's only child, Carlos Donovan Alvarez, who is now 26 years old.  The fourth is Crystal Giordano, Alvarez's current girlfriend, who works as a Housekeeper for the Mount Sinai Hospital System and makes around $40,000 per year.  Each of these individuals understands the

Carlos Alvarez (18-cr-656)                6                October 31, 2018

significance of signing a surety bond and has come forward without hesitation to support

Alvarez's application for pretrial release.

Thanks in large part to the support of his family and friends, Alvarez would have both a

job and a home to return to if released on bail.  He would consent to home detention with

electronic monitoring as well as any other reasonable conditions or assurances requested by the

Court beyond what is proposed in this letter.  Alvarez also has an annuity fund with the union

which has a current balance of $81,116.31.  He is willing to sign over his interest in this fund as

collateral in addition to the bond.

## DISCUSSION

Pretrial detention is the last resort when there is no condition or combination of

conditions that will reasonably assure the presence of the defendant as required and the safety of

the community.  The statute provides that the Court "shall order" the defendant's pretrial release

unless it determines by a preponderance of the evidence that the defendant presents an

unreasonable risk of flight or by clear and convincing evidence that he poses a danger to the

community.  18 U.S.C. § 3142(b).

Of course we recognize that, given the nature of the charges in the indictment, the Bail

Reform Act of 1984 also establishes a rebuttable presumption that no combination of conditions

can reasonably assure the presence of the defendant and the safety of the community.  § 3142(e).

But that presumption is rebuttable.  When it operates, the defendant "bears a limited burden of

production, not a burden of persuasion, to rebut that presumption by coming forward with

evidence that he does not pose a danger to the community or a risk of flight." *U.S. v. Mercedes*,

254 F.3d 433, 436 (2d Cir, 2001).  And at all times, the Government bears the burden of

persuasion. *U.S. v. Rodriguez*, 950 F.2d 85, 88 (2d Cir, 1991); *see also Mercedes*, 254 F. 3d at

436 ("Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community."). Finally, it is important to bear in mind the statutory admonition that "Nothing in [the Bail Reform Act] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

There are numerous reasons to find the presumption rebutted here, and to further find that there is a combination of conditions that will reasonably assure the presence of Alvarez as required and the safety of the community. First, few defendants have deeper roots in this community than Alvarez. He has lived here his entire life, has maintained steady employment, and his family and friends are all here and have stepped forward as sureties. He has no ties elsewhere and does not even own a passport.

Second, it could hardly be clearer that the seven drug trafficking charges he faces provide no justification for continuing Alvarez's pretrial detention. We do not intend to minimize the significance of illegal drug trafficking at any level, but the allegations against Alvarez do not paint the picture of a typical federal drug trafficking defendant—the type Congress had in mind in enacting the presumption. If convicted, Alvarez's base offense level for his drug trafficking counts (which would constitute a single group) would be 12—the lowest possible level for drug trafficking offenses. In fact, based on the miniscule quantities involved in these offenses, even if Alvarez had committed all of the charged crimes twice, he would *still* be in the range of level 12, carrying a penalty of less than 1.5 years.

Third, the § 924(c) charges will not be sustained by the Government's evidence. Neither weapon was used or carried during the drug trafficking charge it is linked to, and no rational jury could conceivably find that either one was possessed "in furtherance" of drug trafficking. Indeed, the facts underlying the June 28 transaction do not even support a plausible inference that Alvarez possessed the firearm at all, let alone in furtherance of a drug trafficking charge.

Carlos Alvarez (18-cr-656)                    8                    October 31, 2018

## CONCLUSION

In sum, though this complaint facially presents as a typical case involving drugs and guns, it is anything but. The small quantities of the substances involved, the novel and attenuated factual theories underlying the intentionally coercive § 924(c) counts, and the overt attempt to use those charges to force cooperation make this case highly unusual.

Carlos Alvarez presents neither a flight risk nor a danger to the community. He has a job, a home, and family and friends who continue to support him. We ask that the Court grant our application for bail and allow Alvarez to be a gainfully employed, self-sufficient member of the community in which he has spent his entire life, and to actively and meaningfully participate in preparing his own defense. We will be prepared to address any additional concerns raised by the Court at tomorrow's status conference, and stand ready to provide further evidence of the information contained in this letter should the Court require it.

Sincerely,

John Gleeson, Esq.
Marisa R. Taney