# PATRICK J. BRACKLEY
– ATTORNEY AT LAW –
233 BROADWAY, SUITE 2370
NEW YORK, NY 10279
TEL. (212) 334-3736
FAX (212) 513-7068

September 13, 2020

The Honorable Laura Taylor Swain, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 17C
New York, New York  10007-1312

## MEMO ENDORSED

Re: <u>United States v. Carlos Alvarez</u> 0208 1:18 CR 656-01 (LTS)

Dear Judge Swain:

    I write in reference to the above-entitled matter, in which, pursuant to Federal Rule of Criminal Procedure 12 (b)(3)(iv), Carlos Alvarez, requests a post-guilty-plea hearing on the issue of whether he was entrapped into possessing the heroin and weapons which he already admitted to intentionally possessing in his guilty pleas to the eight counts of the Indictment.

A.    <u>Factual Background</u>

    In an October 31, 2018 bail application, Judge Gleeson set forth the crux of Mr. Alvarez' claims of outrageous Government conduct:

> This is an unusual case. Carlos Alvarez faces seven separate drug trafficking charges, but the aggregate quantity of narcotics involved--counting all of the controlled buys and the fruits of the search warrant executed in his home-is less than an ounce of powder cocaine and three one-hundreths of a gram of heroin. The total receipts over the almost three-month period of drug trafficking alleged in the indictment are $1,200. Based on the charged conduct for Counts One through Seven, the applicable advisory Guidelines range would most likely be either 8-14 months or 12-18 months.
>
> Counts Eight and Nine, on the other hand, are on the opposite end of the sentencing spectrum. Conviction on those counts, which have been brought under 18 U.S.C. § 924(c), would mandate a minimum aggregate sentence of 30 years in prison. As

> discussed in more detail below, those counts provide half of the explanation of why the FBI engaged a confidential informant for a months-long investigation into such minor drug trafficking. A cold murder case provides the other half....
>
> ...Through this case, the Government is pressuring Alvarez to provide testimony in a 22- year-old murder case for the second time in a decade. Convinced he has knowledge about (but not necessarily participation in) that crime, and determined to coerce his testimony, the Government retained the informant, an addict, to purchase user-quantities of cocaine from him this past summer. Knowing that the minor drug trafficking allegations those efforts produced would not accomplish their goal, the Government then sought, again through the confidential informant, to put Alvarez in the position in which he finds himself today: either testify for the Government in an old, gang-related murder case, or risk conviction on convoluted charges that carry mandatory sentences that would require him to spend virtually the rest of his life in prison.

Gleeson October 31, 2018 bail application at 1, 5.

Thereafter, on September 6, 2019, Mr. Alvarez pled guilty pursuant to a plea agreement to all counts save Count 8 of a nine-count indictment. Counts One through Six charged separate sales of small amounts of cocaine over two months in mid-2018, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C). PSR, at ¶¶ 1-7, 16-24. Count Seven charged that a summer 2018 sale of cocaine and heroin violated the same statutes. Id. at ¶ 8, 25-26. Count 9 charged an 18 U.S.C. § 924(c)(1)(A) violation for possession of a firearm in relation to the Count 7 sales. PSR, at ¶¶ 10, 17, 19, 26.

B.   The Law On The Defenses of Outrageous Government Conduct And Entrapment.

   1. Entrapment

Where an issue of fact is presented, the defense of entrapment is an issue for the jury. United States v. Liounis, 2005 WL 563171 (S.D.N.Y. 2005); United States v. Leighton, 265 F.Supp. 27, 36 (S.D.N.Y.1967)(citing Sorrells v. United States, 287 U.S. 435, 452 (1932); United States v. Riley, 363 F.2d 955, 957-958 (2d Cir. 1966); United States v. Gaines, 353 F.2d 276 (6th Cir. 1965); United States v. Pisano, 193 F.2d 355 (7th Cir. 1951).

   2. Outrageous Government Conduct.

"[G]overnment involvement in a crime may "become so excessive that it violates due process and requires dismissal of charges against the defendant even if the defendant was not entrapped." United States v. Al Kassar, 660 F.3d 108, 121 (2d Cir. 2011); see also United States v. Russell, 411 U.S. 423, 431–32 (1973). While the claim is "frequently raised, it seldom succeeds." United States v. Schmidt, 105 F.3d 82, 91 (2d Cir.1997). Nevertheless, claims of outrageous government conduct should be "taken seriously because ensuring that the government does not trample in an unconscionable manner on individual dignity is a bed-rock duty of judicial officers." United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997).

"Unlike the entrapment defense, which focuses on the defendant's predisposition, the due process claim focuses on the conduct of the government agents." United States v. Myers, 692 F.2d 823, 836 (2d Cir.1982). "[W]hether investigative conduct violates a defendant's right to due process cannot depend on the degree to which the government action was responsible for inducing the defendant to break the law. United States v. Chin, 934 F.2d 393, 398 (2d Cir.1991). "The government's use of "manipulative, sneaky, and deceitful investigative methods does not, without more, rise to the level of a constitutional outrage." United States. v. Colon, 71 F.Supp.3d 269 (D. Conn. 2014). Rather, the existence of a due process violation must turn on whether the governmental conduct, standing alone, is so offensive that it 'shocks the conscience' regardless of the extent to which it led the defendant to commit his crime." Chin, 934 F.2d at 398.

The "burden of establishing outrageous investigatory conduct is very heavy." United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999). It requires that the defendant "show that the government's conduct is 'so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction.' " Al Kassar, 660 F.3d at 121 (quoting Schmidt, 105 F.3d at 91). "It does not suffice to show that the government created the opportunity for the offense, even if the government's ploy is elaborate and the engagement with the defendant is extensive." Id. Generally, "the government's involvement in a crime must involve either coercion or a violation of the defendant's person." Id.

C.      Conclusion

Mr. Alvarez respectfully requests that the Court order a hearing on these issues, as well as discovery on the issue of sentencing manipulation in that the Government violated its "duty to arrest" him on May 23, 2018.

Respectfully submitted,

s/ Patrick Brackley

cc:   AUSA  Maurene Comey

The foregoing letter application is denied without prejudice to timely renewal as a properly documented and factually supported motion.  DE#111 resolved.

SO ORDERED.
9/16/2020
/s/ Laura Taylor Swain, USDJ