UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                        No. 18-CR-656 (LTS)

CARLOS ALVAREZ,

        Defendant.

------------------------------------------------------x

## Memorandum Order

The Court has received Defendant Carlos Alvarez's motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). (Docket entry no. 179, the "Motion.") On September 6, 2019, upon pleading guilty, Mr. Alvarez was convicted of seven narcotics offenses, each a violation of 21 U.S.C. section 841(b)(1)(C), and one count of using or carrying a firearm during and in relation to a narcotics offense in violation of 18 U.S.C. section 924(c)(1)(A)(i). (Docket entry no. 56.) On May 4, 2021, the Court sentenced him principally to a total of 60 months and one day of imprisonment, to be followed by a three-year supervised release term. (Docket entry no. 177.) On May 14, 2021, Mr. Alvarez filed a Notice of Appeal of his conviction and sentence. (Docket entry no. 178.)

Mr. Alvarez is currently incarcerated at the Metropolitan Detention Center Brooklyn (the "MDC") and, according to defense counsel, is currently expected to be released from Bureau of Prisons ("BOP") custody on or about November 15, 2022. (Motion at 1.)

Mr. Alvarez seeks immediate release from custody, claiming principally that the COVID-19 pandemic, Mr. Alvarez's health conditions (including "a history of hypertension, right ventricular damage due to hypertension, high cholesterol, [ ] borderline diabet[es]," and a history of a 2015 heart attack), and his experience at the MDC during the pandemic constitute

"extraordinary and compelling reasons" to reduce his sentence. (See Motion at 1-5; docket entry no. 184 ("Reply") at 1-3.) On June 24, 2021, the Government filed its opposition to the Motion. (Docket entry no. 181 ("Opp.").) The Court has reviewed the parties' submissions carefully and, for the following reasons, Mr. Alvarez's Motion is denied.

## DISCUSSION

As an initial matter, the Government argues that, given Mr. Alvarez's pending appeal of the Court's May 4, 2021, judgment, this Court lacks jurisdiction to grant Mr. Alvarez's Motion. (Opp. at 2, 4-5.) The Government is correct as to this point. An appeal "divests the district court of its control over those aspects of the case involved in the appeal." U.S. v. Ransom, 866 F.2d 574, 575 (2d Cir. 1989) (citation omitted). Accordingly, this Court lacks authority to modify Mr. Alvarez's sentence during the pendency of his appeal. However, as the parties agree (Opp. at 2; Reply at 1), while the Court lacks authority to grant the Motion because of Mr. Alvarez's pending appeal, Federal Rule of Criminal Procedure 37(a) authorizes the Court to (1) defer considering the Motion, (2) deny the Motion, or (3) "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." The Court therefore turns to the merits of the Motion.

Mr. Alvarez seeks an order directing his compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-36).[1]  The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction.  The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction.  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).  "The defendant has the burden to show he is entitled to a sentence reduction" under section 3582(c)(1)(A).  United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

The Court's consideration of the section 3553(a) factors[2] at the time of Mr. Alvarez's sentencing hearing on May 4, 2021, is reflected in the transcript of that hearing.  (See docket entry no. 185 ("Sentc. Tr.").)  As to the nature and circumstances of the offense, the Court noted that Mr. Alvarez "made several cocaine sales to a confidential informant" between "at least May and July of 2018," and that, during this time, "Mr. Alvarez had possession of one

---

[1]  The Government does not dispute that Mr. Alvarez has exhausted his administrative remedies as required under section 3582(c)(1)(A).  (See Opp. at 2.)

[2]  The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."  18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-36).

firearm, which he displayed to a confidential informant in the course of his sales of cocaine, and another firearm, which he sold to the confidential informant along with hollow-point bullets, which are very destructive projectiles." (Id. at 33.) The Court found it "particularly disturbing" that Mr. Alvarez engaged in this activity "during a time period in which he was doing well in his legitimate employment that he had painstakingly worked to establish after a long period of imprisonment for earlier drug offenses." (Id. at 33-34.)

However, the Court also considered the facts that Mr. Alvarez witnessed violence and heroin abuse in his household during his childhood, and lost his parents when he was a young man. (Sentc. Tr. at 34.) The Court further considered Mr. Alvarez's experience in custody, including his lack of disciplinary record, his completion of an alternative to drug dealing class, and his work as an inmate companion, as well as the fact that he had been in custody "during the harrowing polar vortex breakdown of light and heat [at the MDC]" and during "the lockdowns imposed as a result of or in response to [the COVID-19] pandemic." (Id. at 35-36.) The Court also acknowledged Mr. Alvarez's family circumstances and re-entry plan, including the fact that his fiancé has continued to pay his union dues during his time in custody, thereby possibly allowing him to return to union employment upon his release. (Id. at 35.) Having considered those factors, as well as others stated on the record, the Court sentenced Mr. Alvarez to 60 months of imprisonment on the firearm count (the statutory minimum), and one day of imprisonment on each of the seven narcotics counts, to run concurrently (a downward variance from the guidelines range of 8 to 14 months applicable to those counts), to be followed by a three-year term of supervised release. (Id. at 37-38.)

In the approximately three months since Mr. Alvarez's sentencing, the section 3553(a) factors are generally unchanged, though Mr. Alvarez now reports that his "co-op is

scheduled to go into eviction in August 2021 if he is unable to pay the arrears," and that his immediate release and employment might allow Mr. Alvarez to avoid that eviction. (Motion at 4.) Mr. Alvarez requests that the Court consider this hardship in its assessment of his Motion.

With this report and the section 3553(a) factors in mind, the Court next considers whether Mr. Alvarez's proffered extraordinary and compelling reasons warrant a reduction in his sentence. 18 U.S.C.A. § 3582(c)(1)(A).

Mr. Alvarez's first proffered basis for immediate release is the COVID-19 virus, and the threat posed by that virus to Mr. Alvarez, given his age and health conditions. To be sure, certain of Mr. Alvarez's health conditions—including hypertension, borderline diabetes, and his weight—may place him at a greater risk of suffering severe illness from COVID-19 if he were to contract that virus. See Centers for Disease Control ("CDC"), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 10, 2021); (Motion at 2.) However, Mr. Alvarez is only 49 years old, and is therefore in an age group which does not face the greatest risk of severe illness from COVID-19 infection. See, e.g., United States v. Pina, No. 01-CR-619 (VM), 2021 WL 364192, at *2 (S.D.N.Y. Feb. 3, 2021) ("Furthermore, at fifty-one years old, Piña is not in the 'greatest risk' age group category.") (citing CDC guidance). Moreover, Mr. Alvarez has been fully vaccinated against COVID-19, further reducing his risk of severe illness if he were to contract the virus. United States v. Brown, No. 16-CR-436 (KMW), 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021) ("Because Brown will soon be fully vaccinated, any risk that he may become severely ill from COVID-19 will be reduced significantly."). While Mr. Alvarez reports that he received only the single-dose vaccine produced by Johnson & Johnson ("J&J"), the CDC reports that, during clinical trials, the J&J

vaccine was "66.3% effective . . . at preventing laboratory-confirmed COVID-19 infection in people who received the vaccine and had no evidence of being previously infected," and, more critically, "the vaccine had high efficacy at preventing hospitalization and death in people who did get sick."  CDC, Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last visited August 10, 2021) ("No one who got COVID-19 at least 4 weeks after receiving the J&J/Janssen COVID-19 Vaccine had to be hospitalized.").  The J&J vaccine also appears to be "highly effective in preventing severe illness and death from the Delta and Beta variants of the coronavirus[.]"  The New York Times, New data suggest J. & J. vaccine works against Delta and recipients don't need a booster shot, https://www.nytimes.com/2021/08/06/science/johnson-delta-vaccine-booster.html (last visited August 10, 2021) (reporting on the results of the Sisonke study, the first real-world study of the J&J's effectiveness against the Delta variant, involving nearly 500,000 health care workers in South Africa).

Furthermore, while there have been outbreaks of COVID-19 within the MDC, that facility currently reports low incidence of the virus, see BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited August 10, 2021) (reporting no inmates and five staff members at the MDC currently testing positive for COVID-19), and the BOP's vaccination efforts are well underway.  Id. (reporting that the BOP has administered a total of 208,690 doses of the COVID-19 vaccine, and that 160 staff and 691 inmates at the MDC have been fully vaccinated).  These vaccinations—even if they have not reached every staff member and inmate at the MDC—further reduce Mr. Alvarez's risk of contracting COVID-19.  United States v. Gaffey, No. 18-CR-693 (RMB), 2021 WL 1530053, at *8 (S.D.N.Y. Apr. 19, 2021) ("The Court also notes that several hundred FMC Devens inmates have been vaccinated as of April 19, 2021,

further reducing Gaffey's risk of contracting COVID-19."). Under these circumstances, the risk posed to Mr. Alvarez by COVID-19 does not amount to an extraordinary and compelling reason warranting a reduction in Mr. Alvarez's sentence.

Mr. Alvarez raises as further bases for his Motion the "unusually harsh conditions" he has experienced while in custody at the MDC, his lack of disciplinary history in that facility, his active union member status and support network, including his fiancé, and his possible eviction from his co-operative apartment. (Motion at 3-4.) However, with the exception of Mr. Alvarez's potential eviction, the Court considered each of those factors, as well as the others raised by Mr. Alvarez, in connection with his sentencing on May 4, 2021, in fashioning a sentence that was "sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a). While Mr. Alvarez's potential eviction from his co-operative apartment is an unfortunate possible consequence of his criminal activity and incarceration it does not, without more, and in light of the section 3553(a) factors set forth above, constitute an extraordinary and compelling reason to reduce his sentence.[3]

---

3   Mr. Alvarez invites the Court to find that "the mandatory nature of [his] sentence is an additional extraordinary and compelling reason warranting a sentence reduction . . . ." (Motion at 4 (quoting Opinion & Order, United States v. Ramsay, 96-CR-1098 (JSR) (May 11, 2021 S.D.N.Y), ECF No. 68 ("Ramsay") and United States v. Bess, 455 F. Supp. 3d 53 (W.D.N.Y. 2020)).) In Ramsay, the Court reduced the sentence of a defendant who was sentenced in 1998 to a then-mandatory sentence of life imprisonment, for a crime he committed when was 17 years old, where the "offender's youth, combined with society's evolving understanding of the adolescent brain," as well as "other reason unique to [the defendant]," constituted extraordinary and compelling reasons to reduce his sentence. Ramsay, at ECF pages 1-2, 40-43. In Bess, the Court found that the risk COVID-19 posed to a defendant constituted an extraordinary and compelling reason to reduce a sentence imposed before the pandemic, where that defendant was 64 years old, with "a host of serious medical impairments," including "severely limited heart function," and where the defendant was in custody at a facility with an ongoing and widespread COVID-19 outbreak. Bess, 455 F. Supp. 3d at 63-65. Even assuming this Court is free to consider the mandatory nature of Mr. Alvarez's sentence in connection with this Motion, this case is unlike Ramsay or Bess, and the mandatory nature of Mr.

Having considered the section 3553(a) factors, the bases proffered by Mr. Alvarez for a sentence reduction, and the Government's submission, the Court concludes that the sentence imposed on Mr. Alvarez remains appropriate and consistent with section 3553(a), and that extraordinary and compelling reasons do not warrant a reduction in Mr. Alvarez's sentence.

## C<small>ONCLUSION</small>

For the reasons set forth above, Mr. Alvarez's motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A) is denied. An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered.

Docket entry no. 179 is resolved.

SO ORDERED.

Dated: New York, New York
August 10, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

Alvarez's sentence does not amount to an extraordinary and compelling reason warranting a sentence reduction given the facts of this case.